(132 So. 226)

**BECK et al. v. WOOTEN et al.**

No. 30783.

Jan. 5, 1931.

C. J. Ellis, Jr., of Rayville, for appellants.

Warren Hunt, T. H. McGregor, and George Wesley Smith, all of Rayville, for appellees.

LAND, J.

This is an action in jactitation brought by the surviving widow and heirs of Ike Beck, deceased, who left at the date of his death, November 23, 1928, about 100 acres of land located in Richland parish in this state, and belonging to the community.

Six of the plaintiffs are the major heirs of decedent. The other plaintiffs are two minor heirs, represented by their mother as natural tutrix, who appears also as plaintiff in the present suit, individually and in her own behalf as surviving widow in community.

Plaintiffs have sued defendants for the ownership of the oil, gas, and mineral rights in and under the land in dispute, and to have declared fraudulent and simulated, and ordered canceled from the public records the following instruments: A purported deed to the oil, gas, and mineral rights from Ike Beck to M. W. Wooten, dated December 15, 1921, and recorded February 5, 1930; the deed to these minerals from M. W. Wooten to Tegola, Inc., dated February 8, 1930; and

the deed to these minerals from Tegola, Inc., to T. W. Stark, dated February 11, 1930.

Plaintiffs further claim damages in the sum of $5,000, and interest at the rate of 5 per cent. per annum on all moneys withheld from them as royalty from the gas produced on the property, on account of the recordation of the deeds above mentioned, from the dates of the deposits of the royalty in bank.

In an amendment to the petition, plaintiffs charge that the so-called deed from Ike Beck to M. W. Wooten, of date December 15, 1921, and recorded February 5, 1930, is false, fraudulent, spurious, and has been materially altered, added to, and changed since the death of Beck, on November 23, 1928.

The judgment of the lower court decreed plaintiffs to be the true and lawful owners of the oil, gas, and mineral rights in dispute, but dismissed plaintiffs' demand, as of nonsuit, as to the damages sought to be recovered, and also as to the interest claimed for money withheld.

From this judgment, defendants have appealed.

As plaintiffs have not appealed from that part of the judgment, nonsuiting their demands for damages and interest on deposits withheld, and as plaintiffs have not answered the appeals taken by defendants, the judgment must be affirmed in these particulars.

Defendants, in a joint answer, deny that the deed from Ike Beck to M. W. Wooten is fraudulent and simulated. They aver the genuineness of that instrument, and allege that the consideration of $250 cash, recited therein to have been paid to Ike Beck, has been actually paid.

Defendant T. W. Stark alleges that he is the owner of the minerals in question and should be decreed to be such.

In articles 12 and 15 of their joint answer, defendants Tegola, Inc., and T. W. Stark agree that any equities existing between plaintiffs and the defendant M. W. Wooten may be urged and pleaded as against them, if such equities are held to be good as between plaintiffs and the defendant Wooten.

On the trial of the case, defendants, through their counsel, admitted that the sale by M. W. Wooten to Tegola, Inc., and by Tegola, Inc., to T. W. Stark "is not a genuine sale but a sham for the purpose of concealing the real transaction." Tr., vol. 2, p. 65.

After this admission was made, plaintiffs placed the secretary of Tegola, Inc., on the witness stand to prove their case, and counsel for defendants then announced that he would like to withdraw the admissions already made and go ahead as though they had not been made. This request was refused by the court.

Again, while the defendant T. W. Stark was on cross-examination by plaintiffs, counsel for defendants stated: "I would like to renew the objections already made that we have an admission in the pleadings; the only purpose I can see that the testimony can have is to show that it was not a bona fide trade at the time. Now, we have admitted that any defense that could be held against M. W. Wooten could be held against T. W. Stark, and this testimony is just an unnecessary encumbrance of the record." Tr., vol. 2, p. 111.

Besides, the evidence in the record shows clearly that the deeds to Tegola, Inc., from M. W. Wooten, and from Tegola, Inc., to T. W. Stark, are pure simulations, and were intended to place the minerals in dispute beyond the reach of the surviving widow and heirs of Ike Beck.

If the defendant Wooten, as he contends, had purchased these minerals from Ike Beck in good faith and had paid him a consideration of $250 in cash, as recited in the deed, it would not have been necessary for Wooten thereafter to have made simulated transfers of these minerals to any third person for his protection.

Wooten testified that on December 15, 1921, the date of the deed to the minerals, he agreed to purchase same from Ike Beck for $250 cash, if he would pay his account for $105.38 out of the consideration, and that Beck agreed to do so.

Wooten further testified that he gave Beck a receipt for $105.38 and also gave him credit for $250; that on March 18, 1922, he gave Beck a check for $2.70 to pay for an express package; that on April 8, 1922, he gave Beck a check for $43.85, which shows on face credit of $40 on "min. sale"; that on April 15, 1922, he gave Beck a check for $33, which shows on face credit on "mineral sale"; and that on May 3, 1922, he gave Beck a check for $83, which shows on face "Bal. due on mineral sale of 100 a–Home."

But, as a counter attack upon these checks, plaintiffs have produced and filed in evidence the following document:

"M——
"Mangham, La.—— 192—.

"In Account With
"Dr. M. W. Wooten,
"Physician and Surgeon.

"This is to certify that I did not record the Royalty deed given to me by Ike Beck in fall of 1921 and will not, same being lost or mislaid.

"[Signed] M. W. Wooten
"This 10/9—22."

It is to be noted that this certificate or statement was given by Wooten to Ike Beck on October 9, 1922 *after the dates of all the*

*above mentioned checks,* which Wooten testified were delivered to Beck in payment of balance due on mineral sale.

If defendant had actually paid Ike Beck in full for the minerals, it is manifest that he would not have signed thereafter an agreement not to record the deed from Beck to the minerals, because the same had been lost or mislaid, but would have demanded from Beck either a new deed, or the return of the purchase price paid.

Counsel for defendants, appreciating the very serious and damaging nature of the document offered by plaintiffs, says on page 38 of his original brief: "If the document, plaintiffs 9–A, has a genuine date on it, Dr. Wooten surely knew of its existence, and it would have been *absurd for him to have tried to make up a case against it.*" (Italics ours)

Again counsel for defendants says on the same page of his original brief: "It could not be correct in date if Dr. had really paid him for the deed, as the checks clearly show, *unless he had been repaid his money and had been paid his account,* for *otherwise* he would *not* have written such a document except under the circumstances described by him." (Italics ours)

Wooten claims that the famous letter of October 9, 1922, was really written on April 8, 1922.

The suggestion of counsel for defendants that one of the experts in the case, or that one of the plaintiffs changed this writing as to its date, is without any evidence in the record to support it.

The trial judge and both of the experts in the case are of the opinion that the date has not been altered. After a most careful examination, we concur with them that the paper upon which the date has been written shows no evidence of erasure or of the use

of acid, in order to effect a change in the date.

This paper is of a soft and cheap kind, and, in our opinion, if the date had been erased and written over, the ink would have spread perceptibly in the figures of the attempted new date. On the contrary, the figures "10/9" are clear-cut and distinct, and are written *on the blue line* running through the paper. It would not, be possible; therefore, to have obliterated with acid either of these figures without affecting the blue line itself, which has remained intact.

There is a discoloration in the space in which the "9" of the date "10/9" is written; but it is clearly the print of a soiled finger, and nothing more.

The checks in the record are not consistent with the genuineness of the date of the letter "10/9—22," October 9, 1922.

Nor is the conduct of Wooten, in sending a dun of $108.08 to Ike Beck on September 13, 1922, consistent with the statement on the face of the check of date May 3, 1922, that the balance due on the mineral sale had been paid.

Besides, the act of sale was very incomplete, on December 15, 1921, when Ike Beck signed it and left it with Wooten. The notary had not signed, and did not sign, this act until more than nine years later, and long after Ike Beck was dead. Both of the handwriting experts are positive that the consideration was not written in, nor was the description of the property written until long after the death of Ike Beck.

In our opinion, the plaintiffs have proven their case with reasonable certainty and are entitled to recover.

It is therefore ordered that the judgment appealed from be affirmed.